Galloway v. Horne. Mr. Latimer whenever you're ready. Good morning Your Honors, Gregory Latimer on behalf of Arthur Galloway, the appellant in this matter. This is an appeal from a trial that was conducted in the District Court for Maryland following a tractor-trailer accident on the notorious Beltway circling Washington DC. Mr. Galloway's tractor-trailers ran into defendant's tractor-trailer, is that right? That is correct. Mr. Galloway was a, is a driver from Alabama, routinely travels the Northeast Corridor hauling materials. He had stopped his vehicle in traffic. His vehicle was run into by a trailing tractor-trailer which had been struck by another tractor-trailer which had been As to the two, Dr. Frizzelli and Dr. Kelsey, I always was taught if you're going to offer an expert opinion, the question went something like this, doctor to a reasonable degree of medical certainty, can you say A cause B? I can't find that in the record. Well first of all these were treating physicians. These were not people who were hired for purposes of trial. These were people, but this came out of Maryland, it's not a racist state, so don't you have to establish some causation between the accident and his injury? Well I think under Maryland law, what the law is, is that you go and you look at number one, the proximity. When you, if you don't have expert testimony, you can look at the proximity. There was no question this was in close proximity. He received treatment. The accident happened on Thursday. He has traveled, taken back, in fact, his vehicle was incapacitated. He was not able to drive. As he testified at trial, he laid down on the trip back to Alabama. He got back to Alabama on Sunday. He was in excruciating pain. He then went to see his treating physician, his family doctor, on Monday morning. Is he one of the two doctors I named? That is Dr. Smith, that was Dr. Smith. And that's a curiosity to me. Why did you call his family physician? Could it be he had a pre-existing back condition or, why didn't you call him? Well the treating, first of all, the treating physician did not treat him for the back condition. The treating physician referred him to the neurosurgeon. When you say treating physician, are you talking about the family doctor? The family doctor. First he went to see, first doctor he went to see, sent him to a neurosurgeon. Doctor's. Neurologist. Sisterelli, yes. Neurosurgeon, I'm sorry. Okay. He then treated with, and again, he treated him for his back injury. And if you look at the records in this case, his initial report indicates that because of the treatment he was treating him for was the 18-year-old accident that he had suffered several weeks before. Just like Dr. Kelsey. Did that come into evidence? Yes. Well it didn't come into evidence because the trial judge wouldn't let it into evidence. Well that's what I'm asking. You just referred to the report, the doctor's report, did that come into evidence? The trial judge, no. The trial judge excluded that. It was excluded. Yes. But did the doctor say that that The doctor said that he treated him for the injury suffered in the tractor accident. Dr. Kelsey, who was a pain management doctor, if you look at the record, page 58, indicates that he conducted a physical examination and that it was his impression that the injury that he suffered was as a result of the I don't know if it gets any clearer than that. Well, what you didn't ask is what I also thought was sort of the classic question that you ask to a reasonable degree of medical certainty. But none of these other things where maybe that's just a jury question if you don't ask it quite right. Can you prove causation in Maryland by circumstantial evidence? Well, as I said, the cases that we... Isn't your answer to that yes? Yes. Well, that's what I was thinking. That would be a good way to start. Exactly what you were going to say. Well, yes, sir, you can. Yes, sir, you can. And you can prove it by circumstantial evidence. This guy, did he ever have any back problems before this? None. And he had a back problem how long after the accident? Immediately. All right. In fact... And he ended up having surgery for it? He ended up having surgery for it. He ended up not being able... The question is why you need an expert for that? The question is... Well, that was the argument. We don't need an expert for that. The question is if you need an expert for that. Correct. You said you didn't and the judge said you did. The judge said we did. The judge said that... No, the judge didn't say that. The judge said the doctors were experts, but the doctors did not say... Well, the doctors were experts. They weren't experts on oil. They were experts in a different area, aren't they? Well, they were offering expert... The testimony they would have been off... Would have been providing would have been expert testimony because they are trained in their field and that type of thing. But what she said... You were about to say, but they did not say. What is it they did not say? The trial judge said that they did not answer a question as to causation. And we told the trial judge, you're wrong. You didn't ask them... You didn't ask either of these doctors to answer a question as to causation. We asked... You were going to ask the jury to answer a question on causation. Well, yes and no. We did not ask the word causation. What we asked was, what was your reason for treating? So, no, we didn't ask it the way you're saying... We didn't say about that because he had a bad back. No, because of the incident that occurred. And in fact, as I said, if you look at page 58, Dr. Kelsey couldn't be more clear. And that his impression was a back injury with a protruding disc... Did these records come in of the doctors? The judge wouldn't let them in. No, sir. Is there a comparable rule in Maryland to what we have in the federal rules called 8034? Yes, sir. Okay. Then medical records are accessible. They should have come in. That was the other argument that we made. These were... There's kind of a... They're premised on the theory that people tell their doctor the truth when they go in to see him. We argued that with the magistrate who was the presiding judge, and she rejected that as well. Business records, she rejected that as well. If it wasn't the case, you got yourself a verdict. Well, we did. But, Your Honor, we're talking about a man whose whole life had been built around him establishing a trucking business. He's an uneducated man, but him and his wife had carved out a niche. He was an owner-driver kind of... Yes, sir. He was a contract lessor. He had worked his way up in order to buy his truck. He then bought his truck. His wife was his co-partner managing the business, and she would get him runs. He would come up here with a full load, go back, and she would get him runs. They had sent their kids to school, one, to become diesel mechanics so that they could open up a business. The daughter was also going to drive rigs. The trial judge wouldn't even let that in. Wouldn't he let him testify that he had back surgery? The trial judge wouldn't let him testify to back surgery, wouldn't let him testify as to what treatment he received, wouldn't let him testify as to any of the things that the doctors did, wouldn't let him testify as to the losses that he suffered, wouldn't let him testify as to the future lost wages. The trial judge, this man could say he had pain, but would not allow him to testify what he did to alleviate the pain, wouldn't let him testify as to the drugs he was prescribed in order not to have the pain, would not let him testify about anything that he had to do to get rid of the pain. The trial judge limited him. And if you look at the colloquy here, quite frankly, I tried the case, and I found it astounding, and I sometimes probably inappropriately displayed that, but the trial judge would not let this man, and I had never heard of that before, let a plaintiff testify to the treatment that he received for an injury that he suffered, even though he testified that he went to the doctor and he was in excruciating pain the next day. Was he able to testify that he hadn't had any back problems before the accident? He was able to testify to that, that he hadn't had any back problems before. He had never suffered any injuries. The only thing that bothered him was from time to time aches and pains that people normally have. So he was a completely healthy individual for his age. He did not have any distress, and he was a truck driver. She wouldn't let him testify that he couldn't drive a truck anymore because of the accident. Here's a man who's driving a truck. He's making $150,000 a year. We're not talking about a guy who's doing this and making a little pittance. This is a guy with basically no education who's gotten to a point in life where he's got a trucking business where he's making $150,000 a year, and he couldn't even tell the jury that he couldn't do this anymore because of this accident. How did you get a verdict if all that was kept out? Well, the liability issue was, again, he's stopped, and he's run into by three other vehicles. I mean, there was no question on liability in this case, and what he was able to talk about was the fact, as I said, that he was in pain. I mean, the evidence at trial was he was hit by vehicles weighing in excess of 200,000 pounds, and so you've got a man who's hit in the back by vehicles weighing 200,000 pounds. His tractor, the impact was so great that his rig was incapacitated. His rig had to be towed back to Alabama. He had to drive. So the collision was substantial and significant. The damage to the vehicle was substantial and significant, and he started feeling the repercussions of this right the day after when an adjuster came to see him while he was in the hotel waiting for a ride back to Alabama, and the adjuster was the person that told him to wait until he got to Alabama to go to seek medical care because he would be seeing doctors there. So there was testimony to a certain extent about the injury suffering, and as I said, the trial judge didn't let him talk about the pain that he experienced, but she would not let him testify about what he did to alleviate the pain, and we're not saying that he didn't recover. You get all your medical bills and evidence? Wouldn't let the medical bills in because the medical bills were with the doctors. They weren't connected up enough. That's right. That circumscribed your damage. Circumscribed by damages, the fact that the lost wages and the lost earnings, future earnings, were critical. What were your medical bills that didn't get in? How much? Approximately $120,000. $120,000 of medical bills did not come in? Correct. Those were bills of the two doctors who couldn't testify? Correct. Now, you've taken their deposition. What you'd have been doing would have been offering their deposition testimony about it, right? You weren't going to call them live up there in America. We did the Ben Essay depositions down in Alabama. They were doctors in Alabama. You hadn't read the depositions yet? No, we actually had a video. We had a video and we had transcripts of that deposition. So I see I'm almost out of time. I'd like to reserve a little bit for rebuttal. Thank you. May it please the court, James Liskow on behalf of the Appellee Horn Concrete. Good afternoon. I'm going to take this case, if the court doesn't mind, I guess sort of in reverse. Even assuming error here, the error is certainly harmless. Below, the two distinct opportunities to save himself from the court's ruling. He said he was going to call Dr. Smith during the court's motion in Lemonet hearing. He didn't do it. There's nothing in the record and there's no indication. Which one is Dr. Smith? Dr. Smith would be the family practitioner who originally sent the guy to the neurosurgeon. Judge Schultz made it fairly clear that if he could connect it up, perhaps she would reconsider the issue. If she's misread Maryland law, I mean, that's your supposition here. If she's misread Maryland law, then the witness's testimony is very, it's going to be difficult for him to come within what she perceives to be Maryland law on this. And if she's misread Maryland law, he should have been able to introduce and to evidence from himself with respect to his injury. And I think that it's clear that she was correct. Well, you started out your argument saying assuming she's wrong. And assuming she's wrong, he should have been able to testify about what he wanted to testify. Assuming she's If he's wrong, he should have gotten his medical bills and evidence, right? If she was wrong? He had the opportunity to call Dr. Smith? No, no, no. If she's wrong, he should have been allowed to testify himself about this. The defendant. He does raise two questions. I think the second issue is pretty clear that he can't testify in Maryland to that issue. You know, we all can read the Maryland Court of Special Appeals opinion, but it seems to me that unless you have something that is complicated, you do not need expert testimony under Maryland law. And when you have three tractor-trailers piling into you, it does not seem to me that causation is a complicated question. Well, what you have here is you have a neurosurgeon who has to read an MRI film to even make the diagnosis. Then he has to make the determination whether... And you can bring up all those things about you're not an expert, are you, Mr. Plaintiff? You don't know anything about that, but the plaintiff should be able to testify. I had all of these people crash into me, and I had immediate severe back damage, and I then had this surgery. And the court allowed him to testify I had pain in my back. The court did not allow him to testify I needed surgery. And you're assuming that that's error, and I'm saying if that's error, then maybe he's entitled to some relief. It should have been more clear. Assuming it's error to strike the two witnesses. Oh, but then we go to him. She did not allow him to testify. And I respect that. And I think the Spiegel case is altogether clear that that is not... Is that the Court of Special Appeals opinion? No, that's the Court of Appeals opinion, I believe, Your Honor. That's the... Do not... Maybe we are not on the same page about what Maryland law says, but I thought Maryland law made a distinction between complicated medical diagnoses, in which you need an expert, and uncomplicated ones, in which you do not. And I think that Your Honor is correct in that sense, but here we're talking about something very complicated. We're talking about... What's complicated about this? It's a ruptured disc. Three tractor trailers. You know, I hope this doesn't happen to you, but if it does, people are going to say, oh, this is way complicated. You know, we're not talking about the man being cut in half. I could see if the man was cut in half saying that, but here we have an injury that has no objective... You can't see this injury. This injury is in his back. The injury has to be diagnosed with an MRI film. Somebody has to be competent enough to read the MRI film. The doctor can't just look at... The neurosurgeon can't look at the man and say, oh, he's hurt. Nobody can do that. You have to look at the MRI study, say, okay, this is a protruding disc. It's a herniated disc, and then you'd say, well, what's the course of treatment? You're talking about the nature of the injuries. I think we're talking past one another almost, sounds like in here. How did he get hurt? Did he ever have a back injury before this accident? These tractor trailers wrecked? No. And immediately afterwards, he had problems with his back, and as a result, he had surgery to his back. I disagree. And a jury could figure out whether there's a causal link. To determine whether or not he protruded a disc in his back? To determine how that happened? Well, did he ever have a back problem before? Dr. Cisrelli says he had advanced degenerative disc herniation. Well, and about everybody that's 50 years old has that. But he didn't wait your turn. I mean, you're looking at people, at least one of them sitting up here that's been through some of that. Dr. Cisrelli... That happens with age. And in response to counsel's question... But then you get rammed with a tractor trailer, it really aggravates it. And in response to counsel's question... They talk about, well, you take your victim as you find them in the tort laws, what they taught me back in law school. Yeah, but what we're talking about here is whether or not you can say the gentleman needed surgery and what the injury actually is. I mean, he was allowed... We're talking about whether he's able to put his evidence on. That's what we're talking about. Maybe the You can be hit by three tractor trailers, but you have this pre-existing injury, and that's what caused you to have this herniated disc. All that Mr. Galloway knows is that he has pain. He doesn't know that he has protruding discs. That's the reason he called the doctor. That's the reason he called the doctor. He knows he went to the doctors, he had pain, he explained to him that he'd been in a wreck up on the Beltway there, D.C. And the doctor has to come together. Not everybody knows the whole picture. The doctor down in Alabama doesn't have to know how the wreck occurred. He's not an accident reconstruction expert. How could he have proved this, according to you? He would have to be a neurosurgeon himself, order his own MRI, and read it, and then testify to it? Or suffer an injury that's not as complicated as this back injury. I don't think he can prove this in Maryland. I think the case law is clear, and I think the Spiegel case talks about a back injury and says that's really complicated, you can't do it that way. So I don't see a difference between these two cases. If the man lost his... The Spiegel case involved three tractor-trailers driving into someone. It still involves... Did it? No. It involved a rear-end collision. The guy said, I felt pain immediately. Here we have three tractor-trailers hitting each other. But you still have an injury that's internal that can't be seen, has to be diagnosed on a film. So I think the Spiegel case stands for that's a complicated injury. Is that the case that the judge was referring to in that pre-trial hearing? She's talking... Not the Spiegel case, that was something else. Dessau versus Yoakam. Okay, Yoakam, that was the one she was talking about. But you don't think it is like Yoakam?  Well, what kind of error are you willing to assume? You say you were assuming error, then you qualified it a little bit. What error are you assuming? That plaintiff could get the evidence in of the two doctors. And if the doctors were stricken, and that was error, that error is harmless because he could have called the two other doctors. Okay, now if it was error on the two doctors, would that make it error as to his own testimony? Are you willing to concede that? No, I don't think that... You don't concede that, you're not conceding error on his own testimony. No, I think... Are you conceding error on whether he could introduce his medical bills for $120,000? I'm not conceding any error, what I'm talking about. Your assumption of error, that was the first thing out of your mouth when you stood up here, assuming error, Your Honor. Your Honors, it is harmless. And what error is it, I'm trying to figure out, that you're conceding for those purposes of arguing harmlessness? For purposes of arguing harmlessness, striking of the two doctors, and that's it. That's it? That's it. Not striking his own testimony or his medical bill? No, I think that that's clear, that under Maryland law, to get the bills in... That can't come in? Cannot, cannot, because this is too complicated. Well, it's too complicated. It's too complicated, we have a back injury, the neurosurgeon has to look at an MRI study. I couldn't read it, the plaintiff certainly couldn't read it, and then you have to... And the neurosurgeon has to know how the wreck occurred up in Maryland before he's able to testify as to what the x-ray says. Or at least say he's seeing an acute injury. He's got to say he's seeing an acute injury and say to a reasonable degree of medical probability that it's related, which he never did, nobody ever asked him. Nobody ever asked him that question. But he wasn't put up there to testify to that. The plaintiff testified as to how the accident occurred. He knew how the accident occurred, he knew how his back felt before he got hit with the tractor-trailers in the back. If he wants the doctor, if he wants the evidence to come in that he was actually... What's complicated about that? The injury's internal, he's got to get the doctor to come in and say this is an acute injury. I'm looking at an MRI film, you see an acute injury here. This is to a reasonable degree of medical probability caused by the accident. This is sort of like a garden variety case, a rear-ender and it hurts the back. That wasn't what the district court said. That isn't the basis on which it was allowed. It was disallowed because the doctor, as far as I could tell, the magistrate judge was requiring the doctor to be there at the accident, because the doctor said this is what the patient reported to me. No. That she was in this accident. I would respectfully disagree, Your Honor. What she's saying is the doctor never related the accident to the injury. All that we have is... Well, the medical reports say on there what the plaintiff told him about being in the accident. We're not trying to small claim here, Judge. I mean, you've got to prove a case by throwing the record down. But the medical reports, aren't they admissible under 8034 with the sake comparable rule? No. Well, they're not? They're not. Well, that's interesting. And the Spiegel case, I believe, is the one that says it that we're not going to accept in Maryland. That's where you're back to your complicated argument. Well, the Spiegel case is saying we can't let a medical record substitute for live testimony. That's not testimony. We had the doctor, too. It's not like you're just offering a naked medical record. You've got a doctor who's producing his medical records, the deposition down in Alabama. And he's testifying, too. So you have this cumulative evidence, and he never bothers to answer the one question he should have asked. Is this related to a reasonable degree of medical probability? Can you relate this? He wasn't present when the tractor-trailer wreck occurred on the Beltway up at Washington, D.C. He could still have rendered the testimony and said, This is an acute injury I'm seeing. The gentleman has no preexisting to a reasonable degree of medical probability. It's related. He never says it. Doctors do that all the time. For some reason it wasn't done in this case. The record doesn't reflect anything. There's nothing in the record to relate the causation. There is things in record that make the causation. What? Have you ever heard of circumstantial evidence? For medical causation? Have you ever heard of circumstantial evidence? How the back got hurt. I never had a back problem. I was rammed in the back by an 18-wheel tractor-trailer. And then I had a back problem immediately. And then I ended up with surgery on my back. Then a jury can decide whether there's a connection. That seems to me that's pretty elementary for trying lawsuits. You're missing the big part where somebody says it's related to actually have evidence. You're back to saying they can't prove it by circumstantial evidence. And you have to have direct evidence, you say, to prove it. Or expert evidence. So you're saying every rear-end car wreck case in Maryland, you've got to have an expert witness. Depending on what the injury is, yeah. If the injury is internal, like this, you can't see it. You're talking about a protruding disc. You need a neurosurgeon to come and read a film and to make an informed decision, yeah. If you're talking about perhaps a muscle strain, perhaps you don't need an expert to bring that in. Perhaps if you're talking about a truly horrendous injury where nobody could disagree, where the plaintiff is cut in half or loses a limb, you wouldn't need expert testimony to say, yeah, the truck took his limb off. But here we're talking about an internal injury. Nobody can see this injury outside of using an MRI film. And the doctor has to make a decision whether or not to cut this man open. Yeah, yeah. And the doctor says he has to know what caused his patient's injury. He has to know he's got an injured patient. In order to treat him? He treats an injured patient. But the other evidence can tie in to show how he ended up in the operating room. That's what the whole picture comes together. Here we have a surgery that occurs nine months later. On the record, as it stands now, all we have is the guy felt pain. Well, you could argue that to the jury, that they waited too long to operate on him. They treated him too conservatively. You could argue that. But I can't understand why the jury doesn't get to hear the evidence. Because the doctor didn't say it's related. So you're not willing to assume error anymore. I think you've given up on that. Your harmless argument? I still say any error would be harmless here because he had the two other doctors. So you'd say any error is harmless? If it was error to keep out his own testimony, that's harmless too? He still could have called the other two doctors. Any evidence, any error here is harmless? He still had enough opportunity to call the other two doctors. It was evident during the motion to eliminate hearing that that was what Judge Schultz was requiring. We have no motion to postpone the trial. We have no attempt. We have nothing in the record that says, I'm going to call Dr. Smith, except he says, I'm going to call Dr. Smith or I make home, but he doesn't do it. He says, I'm going to call Dr. Abend and then makes this argument that Abend should be subsidized by the U.S. taxpayer with no real support for that. So any error would be harmless here because any error he could have corrected either before trial by calling Dr. Smith or asking for a postponement in order to call Dr. Smith, he says for the first time in his reply brief, oh, there were some logistical problems. We have no record of that. He never told the court about it in the form of a motion to postpone. And then in the middle of trial, he says, I'm going to call Dr. Abend. He sends Abend a subpoena. Who's that guy? Abend was the defendant. Is that your expert? He certainly was. I just didn't remember. I don't remember the names of all these people. But I remember that he, it seemed like kind of a desperation move. He tried to call your expert. And you wanted to charge him $6,000 for it. I didn't want to. The doctor wanted to charge him for his time. I wasn't going to see Nicolet. I'm not allowed to charge somebody when they've got a subpoena in their hand. They've got to get on a witness stand. And Dr. Abend's not, he's not a public. He's a witness once he gets a subpoena. And he's not a public. But that's moot once you're conceding this error thing, I think, for purposes of arguing harmlessness. I think in terms of Dr. Abend, there's no reason for the U.S. taxpayer to subsidize this man's tort suit. There's no case law cited. There's no reason for him to go in for him. You might have had an argument that he couldn't call your expert. You might have had an argument there he couldn't call your expert. But I don't think much of your argument about your expert trying to charge the other side to testify to trial. And I think that's something that's clearly abusive discretion. I don't think that's an abusive discretion by Judge Schultz, that he's got to pay the expert. Okay. You're concentrating on your strongest argument, perhaps, and good for you. But if you lose on your earlier argument, you lose. So maybe you should shift. Or maybe you don't have any more to tell us. I think it's fairly clear that when you have to have an MRI and a myelogram. The case that you relied on, the Spiegel case, I kept wondering why it didn't stick in my mind. And the reason it didn't stick in my mind is it's all about business records. It's not about this issue at all. Well, in that case, the plaintiff is trying to put in medical records as business records, if I have the right case in my mind. And the court's saying, not going to happen. But it doesn't decide, as I had thought that you were saying, that a crash like this is a complicated medical thing on which you need experts. It was dealing with business records. And perhaps I'm confusing that with the Dessau v. Yolkin case, which was the one that lied on it. Well, Dessau is the Court of Special Appeals case, which may or may not be accurately reflecting what the Maryland Court of Appeals has held in distinguishing between. But in any event, it makes a distinction between complicated and uncomplicated. And so if we should conclude that this is not an injury that is so complicated in which you need a medical expert, we would have to reverse. That was the basis of Judge Schultz's decision. And I think, yes, if Your Honor finds that it's not so complicated. You would need an expert as a matter of law under Maryland law. Yes, that's right. But what we're dealing with here, I think... See, when you started out in saying, assuming that this, I thought that you thought that that was essential. But it's not. No, I agree with Your Honor. If Your Honor finds that this is so easy... An injury that does not require expert testimony for its proof. Sure. But here we have a neurosurgeon cutting the man open and reading various films. I think there's... And we also have three tractor-trailers running into somebody and immediately claiming back injury. Right, but you also have... And all of your arguments are good stuff for cross-examination. I mean, there, I assume, if they get the relief, if the plaintiff gets the relief that he wishes, the jury verdict goes away. Maybe you'll get a lesser jury verdict on remand. I think the court should leave it alone. I think that these issues are too complicated, that they rise to the level. What you have is a decision whether or not to cut this gentleman open and whether or not that was necessitated by a car accident. That's not something a layman can understand. But if the judge has misconstrued Maryland law, we've got to reverse, even if the verdict was okay. I don't think... She's... I don't believe that she has. I understand that. And I don't think Your Honor... She's agreed with me earlier that if she has, he's entitled to reversal. If this issue is one that is not complicated enough... Enough to require expert testimony under Maryland law, we must reverse. That would be correct. I just respectfully would... Think that that's not so. That's right. Thank you, Your Honor. Thank you. If I may, just with regard to the complicated medical issue, Maryland has not been... Can we just go back to Judge Floyd's original question? I don't understand why you didn't ask the straight-up question to a degree of medical certainty what caused this. And that may have been an error on my part, but normally, that question is only asked of expert witnesses, people that you're talking to. We've already got Dr. Kelsey. As I said, if you look at page 58... Did you have an expert? No. We use treatings. Okay. Dr. Kelsey, after, in his initial evaluation, after doing his physical examination, his impression, and this is in the record at 58, and this is what he used in his DeBene essay deposition, impression, chronic lower back pain, lower back and right lower extremity pain, secondary to herniated disc from a recent motor vehicle accident. He's telling you what his impression is based upon the history and examination and radiological findings, and this is why he's treating the man. And they indicated this is a nine-month period where you have the surgery. Well, he's not doing nothing for nine months. He's treating. He goes to his family doctor. His family doctor says he can't handle it. He sends him to a neurosurgeon. The neurosurgeon says, we got an MRI. We see this disc protrusion, but I'd like to treat it conservatively first. Let's go to this pain management, see if we can deal with it. He goes to Dr. Kelsey. He has epidural blocks and physical therapy. The problem continues to worsen. He goes back to Dr. Cicirelli at the behest of Dr. Kelsey, who then schedules surgery. He then has the surgery. So this is a culmination of what happened, and the law is clear about a complicated medical issue. What you need is some significant passage of time between the initial injury and the onset of trauma, which you don't have. The impact of the initial injury on one part of the body and the manifestation of the trauma in some remote part, which you don't have. The absence of any medical testimony, which you don't have. And a more arcane cause-and-effect relationship that is not part of a common lay experience, which you don't have. And what are you relying on? This is Giant Fool v. Booker, 152 Maryland at 166, quoting S.B. Thomas, Inc. v. Thompson and the Wilhelm case. Talking about one of those cases is the Maryland Court of Appeals. Yes, that's Wilhelm, Your Honor. And so the law is clear about what a complicated medical issue is, and you don't have any of the factors that would make this a complicated medical issue. At the very least, Your Honor, Mr. Galloway should have been allowed to present to the jury what his experience was as a result of being struck by these tractor trailers, and he should have been allowed to tell them what the effect upon his life it had. If any essay deposition, the defendant's lawyer was present? All of the defendant's lawyers were present and asked questions. And asked questions. Yes. So, Your Honor, if there's no other questions, I will submit what we have with regard to the briefs and what we've said today. All righty. Thank you very much. Thank you.
judges: Diana Gribbon Motz, Robert B. King, Henry F. Floyd